1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  MADELEINE F. SHATTENKIRK, individually
and on behalf of all others similarly situated,

10              Plaintiff,

NO.

11       v.

**CLASS ACTION COMPLAINT**

12  ALASKA AIRLINES, INC., a Delaware
corporation,

JURY DEMAND

13
14              Defendant.

15       Plaintiff Madeleine F. Shattenkirk ("Plaintiff"), individually and on behalf of all others

16  similarly situated, brings this class action lawsuit against Defendant Alaska Airlines, Inc.

17  ("Alaska" or "Defendant") based upon her own personal knowledge, the investigation of her

18  counsel, and on information and belief as to all other matters.

19                    **I.  INTRODUCTION**

20       1.    This proposed class action concerns monetary damages that Plaintiff and

21  consumers residing nationwide have suffered as a result of purchasing travel insurance through

22  Defendant's website. Defendant's website encourages ticket purchasers to protect their trip with

23  travel insurance provided by Allianz (or any other third-party insurers that have partnered with

24

CLASS ACTION COMPLAINT - 1

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Alaska) to offer travel insurance exclusively through Alaska's website. Alaska does not disclose, however, that it has a financial interest in the travel insurance and, in fact, receives an illegal kickback from the insurer in exchange for brokering the insurance sale. Defendant's website misled her into paying for the cost of that illegal kickback, and Defendant is therefore liable for these damages, among other things.

2.      In light of the above, Plaintiff brings common law claims for unjust enrichment, fraud, conversion and for violations of the unfair business practices and consumer protection statutes of the State of Washington and the State of Florida, as alleged herein.

## II.  PARTIES

3.      Plaintiff Madeleine F. Shattenkirk is a resident of Boca Raton and citizen of Florida. She purchased trip insurance from Alaska's website at www.alaskaair.com on June 16, 2019.

4.       Defendant Alaska Airlines ("Alaska") is a Delaware corporation with its principal place of business in Seattle, Washington. Alaska is not licensed under any state laws, including the state of Washington, to solicit, negotiate, transact or effect contracts of insurance.

## III.  JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because members of the proposed Classes are citizens of states different from Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

6.      In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus

CLASS ACTION COMPLAINT - 2

of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

7.      This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction.

8.      This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965(d) because it is found, has agents, and transacts business in this District and because it has its principal place of business in the State of Washington.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

## IV.  FACTUAL ALLEGATIONS

**A.      Alaska receives illegal kickbacks/commissions from the travel insurers that Alaska promotes on its website.**

10.     Travel or trip insurance essentially covers any added costs or lost payments that an individual might incur while on a trip or planning a trip. For example, if a consumer is forced at the last minute to switch or cancel a flight, then travel insurance will cover any flight-switching fees or—if necessary—the otherwise-lost cost of the flight.

11.     Almost every state in the nation requires insurance agents operating within their borders to be licensed, which allow states to ensure—among other things—that the agent is subject to regulation, that the agent helps bear the cost of that regulation, and that the agent is sufficiently qualified to sell a product as potentially complicated and significant as insurance. Consequently, almost every state in the country forbids unlicensed individuals and entities from

CLASS ACTION COMPLAINT - 3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    acting as insurance brokers or receiving money for insurance brokering. This includes the State

2    of Washington. *See* WAC 284-17-011(1).

3          12.     Despite these prohibitions, transportation companies such as airlines, including

4    Defendant, have come under fire for receiving undisclosed, illegal brokerage fees or

5    commissions—i.e., kickbacks—from the travel-insurance companies that they promote on their

6    websites. In August 2018, United States Senator Edward J. Markey released a report detailing

7    this practice, which—in addition to being illegal under state law—is inequitable for several

8    reasons, including: travel insurance is typically only necessary, in the first place, because the

9    airlines have begun charging exorbitant switching and cancelation fees; the insurance that these

10   airlines promote is often significantly inferior to the insurance that's available on the open

11   market (i.e., it offers less coverage and presents significant obstacles to reimbursement); and

12   travel-insurance kickbacks now constitute an illegal but significant "profit center" for "almost

13   every major airline" in the country—one that's being unknowingly funded by consumers.[1]

14         13.     Defendant Alaska engages in the type of unlicensed insurance brokering

15   described in the Markey Report. Throughout the class period, Alaska offered for sale and urged

16   its passengers, via its website, to buy travel insurance provided by a third-party insurer—

17   Allianz Global Assistance.[2] If a passenger in fact opted for coverage, she paid a certain sum to

18   the insurer in exchange for the travel insurance. That sum, however, included an undisclosed

19   fee that the insurer would then pay back to Alaska, in exchange for helping broker the

20   insurance sale; i.e., Alaska was paid an illegal brokerage fee.

21   _____

22   [1] *See* OFFICE OF SENATOR EDWARD J. MARKEY, FLYER BEWARE: IS TRAVEL INSURANCE WORTH IT? (2018), available at
     https://www.markey.senate.gov/imo/media/doc/Flyer%20Beware%20Report.pdf

23   [2] More specifically, Allianz Global Assistance, Jefferson Insurance Company, and BCS
     Insurance Company.

24

CLASS ACTION COMPLAINT - 4

14. Alaska did not, however, disclose to consumers that it was receiving these kickbacks, and its website misled consumers into unknowingly funding its improper brokerage fees, as described in more detail, below.

**B.** **Alaska misleads consumers into funding its illegal brokerage fees.**

15. In addition to operating flights nationwide, Alaska operates 1,200 flights to 115 destinations in the United States, Canada, Mexico and Costa Rica. As part of its business, Alaska sells tickets to customers through its website, www.alaskaair.com.

16. When a customer visits Alaska's website, the site allows the customer to select their preferred destination and travel dates.

17. After the customer selects her specific flight, Alaska's website provides the customer with the price of that flight.

18. Before the customer completes her purchase, Alaska's website presents customers with the option to buy travel-insurance policy with Allianz Global Assistance.

19. After the customer selects the desired flight or flights, enters her personal information, and selects her seat, the customer reaches the "Checkout" page.

20. Below the area where a person enters his or her payment information is the conspicuous statement in bold: **"Highly Recommended: Protection for your trip to [city]."**

21. Below Alaska's recommendation, Alaska states in red, conspicuous font: "Don't miss out! Offer expires when booking is finalized."

22. This is followed by an option to click, "Yes . . . Add protection for a total of [price]" followed by the conspicuous statement in green font: "Highly Recommended."

CLASS ACTION COMPLAINT - 5

23.     Customers also were given the option to click "No . . . I choose not to protect my [ticket price] purchase. I understand by declining coverage I may be responsible for cancellation fees and delay expenses."

24.     At the bottom of the page in smaller font is the statement "Recommended, offered and sold by Allianz Global Assistance. Underwritten by Jefferson Insurance Company or BCS Insurance Company (sic)."

25.     At no point during the transaction did Alaska disclose its financial interest in the sale of travel insurance to its consumers—either before, during, or after the consumer's transaction with Alaska.

26.     In addition, if a customer elects to buy travel insurance for a flight, the insurer sends the customer an email containing a copy of the purchased insurance policy. Nowhere in that communication or accompanying insurance policy is there any reference to Alaska receiving any payment in connection with the transaction.

27.     At no point does Alaska disclose to consumers that it receives a commission or kickback every time a customer elects to purchase travel insurance, or that the consumers are funding this kickback. At no point during the class period did Alaska disclose to Plaintiff, or any of the class members, the true nature of its relationship with Allianz or any other entity that is associated with the travel insurance offered on Alaska's website.

28.     Further, by indicating that Allianz will be the recipient of Plaintiff's travel-insurance payments (e.g., by noting that these entities will bill Plaintiff for the full amount of her travel-insurance costs), Alaska's website fails to disclose that a consumer's travel-insurance costs are not passed through entirely to the third-party insurance company.

CLASS ACTION COMPLAINT - 6

**C.    As a result of Alaska's illegal brokerage fees, Plaintiff and the proposed class were damaged.**

29.    Had Alaska disclosed that the price of the travel-insurance product on Alaska's website incorporates an illegal commission paid to Alaska (as opposed to being based solely on underwriting risk and insurer profit), Plaintiff would have not bought the travel insurance or would have paid less for travel insurance.

30.    Indeed, travel insurance is available on the open market that is less expensive than the insurance offered on Alaska's website, and often provides superior or comparable coverage, in part because the open-market insurance doesn't include any illegal kickbacks to Alaska. For example, Alaska's insurance is nearly twice as expensive as comparable—if not superior—plans that are otherwise available to consumers. This discrepancy is attributable to the illegal commissions that Alaska receives from its insurers.

31.    On or around June 16, 2019, Plaintiff Shattenkirk bought a travel insurance policy on Alaska's website to cover her airline ticket purchase.

32.    In purchasing the travel insurance, Plaintiff viewed and was exposed to Defendant's website and the statements regarding the travel insurance.

33.    After completing the purchases, Alaska sent Plaintiff correspondence via email with her individual purchase summary and stated that the trip insurance would be billed separately.

34.    At no point did Alaska inform Plaintiff that a portion of the trip insurance billed to her included an illegal kickback to Alaska.

35.    Had Plaintiff been aware that a portion of the costs of the travel insurance was being used to fund an illegal kickback to Alaska, she would not have paid for the travel insurance or would have paid less for travel insurance.

CLASS ACTION COMPLAINT - 7

**D.     Plaintiff's purchase of travel insurance was unrelated to Alaska's prices, rates, or services.**

36.     Alaska provides no services to its customer in connection with the sale of travel insurance on its website.

37.     The price of the travel insurance is a price offered or set by the insurer, not Alaska.

38.     No contractual relationship is formed between the customer and Alaska in connection with a customer's purchase of travel insurance on Alaska's website.

39.     No bargained-for exchange takes place between the customer and Alaska in connection with a customer's purchase of travel insurance on Alaska's website.

40.     Alaska does not compete with other airlines for insurance-brokerage services, which—in any event—it is prohibited from providing under state law.

## V.  CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this proposed class action on behalf of a separate state class – a National Class and a Florida Class (together, "Classes") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), (b)(3) and (c)(4).

The National Class is defined as: All persons who purchased a travel insurance policy on Alaska's website in the United States within the applicable limitations period (the "Class Period").

The Florida Class is defined as: All persons who purchased a travel insurance policy on Alaska's website in the State of Florida within the applicable limitations period (the "Class Period").

42.     Excluded from the proposed Classes are: the Defendant, any entity in which the Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by the

CLASS ACTION COMPLAINT - 8

Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant, and judicial officers to whom this case is assigned and their immediate family members.

43.     Plaintiff reserves the right to re-define the Class definitions after conducting discovery.

44.     **Numerosity (Fed. R. Civ. P. 23(a)(1)).** Pursuant to Rule 23(a)(1), the Classes are so numerous that joinder of all members would be impracticable. While Plaintiff has not yet determined the exact number of Class Members, Plaintiff believes that the Classes are comprised of millions of members geographically dispersed throughout the United States, and the State of Florida. The Classes, however, are readily identifiable from information and records in the possession of Defendant and third-parties and can be ascertained through appropriate investigation and discovery. Class Members may be notified of the pendency of this action by any appropriate methods approved by the Court, which may include mail, email, internet postings, or published notices.

45.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3))**. Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual members of the Classes. Questions common to the Classes include, but are not limited to the following:

(a)     whether Alaska engaged in the unlicensed practice of soliciting, negotiating, transacting, or effectuating contracts of insurance;

(b)     whether Alaska engaged in unlawful, unfair or fraudulent acts and business practices by omitting its receipt or retention of kickbacks/commissions;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1        (c)     whether Alaska's material omissions relating to travel insurance would

2  have been considered material by a reasonable consumer;

3        (d)     whether Alaska's material omissions regarding travel insurance resulted

4  in the class being damaged;

5        (e)     whether Alaska received undisclosed kickbacks, commissions, or fees

6  from the sale of travel insurance; and

7        (f)     whether Alaska was unlawfully enriched at the expense of the class

8  members.

9     46.    These common questions predominate over any questions solely affecting

10  individual class members.

11     47.    **Typicality (Fed. R. Civ. P. 23(a)(3))**. Pursuant to Rule 23(a)(3), Plaintiff's

12  claims are typical of the claims of the members of the Classes because of the similarity,

13  uniformity, and common purpose of injuries she has suffered as a result of Alaska's allegedly

14  unlawful conduct. Like all class members, Plaintiff was damaged by paying money that Alaska

15  deceptively presented as a pass-through charge to an insurance company, when in fact Alaska

16  enriched itself in this process.

17     48.    **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**. Pursuant to Rule

18  23(a)(4), Plaintiff and her counsel will fairly and adequately protect the interests of the Classes.

19  Plaintiff has no interest antagonistic to, or in conflict with, the Classes that she seeks to

20  represent. Plaintiff has retained competent and capable attorneys with significant experience in

21  complex and class action litigation, including consumer class actions. Plaintiff and her counsel

22  are committed to prosecuting this action vigorously on behalf of the Classes and have the

23  financial and other resources to do so.

24

CLASS ACTION COMPLAINT - 10

49.     **Superiority (Fed. R. Civ. P. 23(b)(3).** Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. There will be no significant difficulty in the management of this case as a class action.

50.     **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).** In the alternative, this action may properly be maintained as a class action, because:

(a)     the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant; or

(b)     the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

CLASS ACTION COMPLAINT - 11

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1      (c)     Defendant has acted or refused to act on grounds generally applicable to

2  the Classes, thereby making appropriate final injunctive or corresponding declaratory relief

3  with respect to the Classes as a whole.

4      51.     **Issue Certification. Fed. R. Civ. P. 23(c)(4).** In the alternative, the common

5  questions of fact and law are appropriate for issue certification on behalf of the proposed

6  Classes.

### VI.  FIRST CLAIM FOR RELIEF
### (Unjust Enrichment)
### (On Behalf of Plaintiff and the Nationwide and Florida Classes)

9      52.     Plaintiff re-alleges paragraphs 1-51 as if fully set forth herein and further alleges

10  as follows.

11      53.     Plaintiff brings this claim for unjust enrichment individually and on behalf of the

12  proposed Nationwide and Florida Classes.

13      54.     Plaintiff and each class member conferred a benefit on Alaska by funding

14  Alaska's illegal kickback, which allowed Alaska to become unjustly enriched at the expense of

15  Plaintiff and the class members.

16      55.     Alaska appreciated, accepted, and retained this benefit, as it garnered substantial

17  profits by virtue of its insurance kickback scheme.

18      56.     Under the circumstances it would be inequitable to allow Alaska to retain this

19  benefit, as Alaska obtained these profits through failing to disclose material information to

20  consumers and otherwise engaging in illegal conduct under state insurance laws.

21      57.     Plaintiff's claim to the money Alaska made in the transaction is superior to

22  Alaska's claim, in part because Alaska was never legally entitled to this money.

23

24

CLASS ACTION COMPLAINT - 12

58.     Plaintiff and the Class members suffered damages as a result of Alaska's unjust enrichment.

## VII.  SECOND CLAIM FOR RELIEF
### *Violations of the Washington Consumer Protection Act*
**(RCW § 19.86, *et seq.*)**
**(On Behalf of Plaintiff and the Nationwide Class)**

59.     Plaintiff re-alleges paragraphs 1-58 as if fully set forth herein and further alleges as follows.

60.     Plaintiff brings this claim for relief individually and on behalf of the Nationwide Class pursuant to the Washington Consumer Protection Act (the "WCPA"), RCW § 19.86, *et seq*.

61.     Defendant is a "person" within the meaning of the Washington Consumer Protection Act, RCW § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of RCW § 19.86.010(2).

62.     Plaintiff and other members of the classes are "persons" within the meaning of RCW § 19.86.010(1).

63.     Defendant's principal place of business is within the State of Washington, where it directs the illegal practices detailed in this complaint.

64.     Defendant's failure to disclose its retention of illegal brokerage fees and Defendant's failure to indicate that a portion of Plaintiff's travel-insurance costs would be illegally retained by or funneled to Alaska constitute unfair and deceptive acts or practices because they offend public policy, including as set forth in the Washington Insurance Code, and because these acts and practices are calculated to mislead a reasonable consumer into purchasing travel insurance at an inflated price.

CLASS ACTION COMPLAINT - 13

65.     Washington requires an insurance producer license for the sale of travel insurance. RCW 48.17.170; WAC 284-17-011(1). Defendant's acts constitute the unauthorized sale of insurance in the State of Washington. RCW 48.17.060. By virtue of its violation of the Washington Insurance Code, Title 48 RCW, and its implementing regulations, Defendant has committed a per se violation of the WCPA.

66.     Defendant engaged in this unlawful course of conduct with the intent to induce Plaintiff and the class members into purchasing travel insurance and paying premiums above what they would otherwise pay or above what the policies are otherwise worth.

67.     Defendant's omissions and misrepresentations caused substantial injury to Plaintiff and Class members that is not outweighed by any countervailing benefits to consumers or competitors.

68.     Plaintiff's injuries were not reasonably avoidable: Defendant and its insurers were the sole source of material information regarding Alaska's commissions, and none of these entities disclosed this information to Alaska's customers. Nor could consumers have reasonably anticipated that (for example) Alaska would violate state insurance laws.

69.     Defendant's unfair acts or practices occurred in its trade or business, are repetitive, and have injured a substantial portion of the public. Defendant's general course of conduct as alleged herein is injurious to the public interest, and these actions are ongoing and have a substantial likelihood of being repeated.

70.     As a direct and proximate result of Defendant's unfair acts or practices, Plaintiff and Class members have been injured in an amount to be proven at trial.

71.     Plaintiff and Class Members would not have purchased the insurance at issue but for Alaska's unfair conduct.

CLASS ACTION COMPLAINT - 14

72.     Plaintiff and Class Members purchased travel insurance products that were priced higher than they would have been but for the undisclosed kickbacks, i.e., Plaintiff and the class were overcharged for that product. Plaintiff and the class would not have paid that overcharge had they been aware that it would Alaska was charging it illegally.

73.     Plaintiff and the class have a monetary, out-of-pocket loss, as they paid money to Alaska as a result of its unfair conduct.

74.     Plaintiff and the class are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under the WCPA.

## VIII.  THIRD CLAIM FOR RELIEF
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq.*
### (On behalf of Plaintiff and the Florida Class)

75.     Plaintiff re-alleges paragraphs 1-74 as if fully set forth herein and further alleges as follows.

76.     Plaintiff brings this claim for relief individually and on behalf of the Florida class.

77.     Plaintiff and the Class Members are "consumers" as defined by Fla. Stat. § 501.203(7).

78.     Plaintiff and Class Members purchased "things of value" by buying products and services from Defendant. These purchases were made primarily for personal and family purposes. Fla. Stat. § 501.203(9).

79.     Defendant engaged in the conduct alleged in this Complaint by advertising and entering into transactions intended to result, and which did result, in the sale of insurance services to Plaintiff and Class members. The insurance policies constitute goods, services, and/or property to consumers, including Plaintiff and Class Members. Fla. Stat. § 501.203(8).

CLASS ACTION COMPLAINT - 15

80.     Defendant engaged in acts and omissions that affected trade and commerce. Defendant's acts, practices, and omissions were done in the course of Defendant's business of advertising, marketing, offering to sell, and travel insurance throughout Florida and the United States. Fla. Stat. § 501.203(8).

81.     Defendant, engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204(1), as alleged herein.

82.     Defendant's conduct is considered an unfair method of competition, and constitutes unfair and unconscionable acts and practices. Fla. Stat. § 501.204(1).

83.     These unfair acts and practices violated duties imposed by laws, including but not limited to the FTC Act and Fla. Stat. § 501.171(2).

84.     As a direct and proximate result of Defendant's violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Plaintiff and the Class Members suffered actual damages. Fla. Stat. § 501.211(2).

85.     Also as a direct result of Defendant's knowing violation of FDUTPA, Plaintiff and Class Members are not only entitled to actual damages, but also declaratory judgment that Defendant's actions and practices alleged herein violate FDUTPA, and injunctive relief.

86.     Plaintiff brings this action for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiff, the Class members, and the public from Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable, and unlawful practices. Defendant's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

CLASS ACTION COMPLAINT - 16

87.     The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and the Class members that they could not reasonably avoid. This substantial injury outweighed any benefits to Plaintiff and the Class.

88.     Defendant's actions and inactions in engaging in the unfair practices and deceptive acts described herein were negligent, knowing and willful, and/or wanton and reckless.

89.     Plaintiff and the Class members seek relief under Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*., including, but not limited to, damages, injunctive relief, and attorneys' fees and costs, and any other just and proper relief.

## IX.  FOURTH CLAIM FOR RELIEF
### (Conversion)
### (On Behalf of Plaintiff and the Nationwide and Florida Classes)

90.     Plaintiff re-alleges paragraphs 1–89 as if fully set forth herein and further alleges as follows.

91.     Plaintiff and Class members have an ownership right to the amounts of their payments illegally diverted to Alaska as a kickback/commission.

92.     Defendant has wrongly asserted dominion over the portions of the payments made by Plaintiff and Class Members for trip insurance that Alaska illegally diverted as a kickback/commission. Defendant has done so with every trip insurance policy purchased through its website.

93.     As a direct and proximate cause of Defendant's conversion, Plaintiff and the Class Members suffered damages in the amount of the payments illegally diverted to Alaska as a commission.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

**X.  FIFTH CLAIM FOR RELIEF**
**(Fraudulent Concealment)**
**(On Behalf of Plaintiff and the Nationwide and Florida Classes)**

94.     Plaintiff re-alleges paragraphs 1–93 as if fully set forth herein and further alleges the following:

95.     Plaintiff brings a claim for fraudulent concealment individually and on behalf of the Nationwide Classes and the Florida Class.

96.     Plaintiff purchased travel insurance via Defendant's website, and was exposed to the language on that website.

97.     Defendant's website omitted material facts regarding Defendant's receipt of illegal insurance-brokerage commissions.

98.     Plaintiff and reasonable consumers relied on Defendant's omissions in deciding to purchase travel insurance and in deciding to purchase travel insurance at the price they paid for it.

99.     But for Defendant's omissions and misstatements regarding its kickbacks, class members would not have purchased insurance from Allianz, or would not have been paid as much as they did for travel insurance.

100.    Defendant knowingly made the omissions and misstatements identified above with the intent to defraud Plaintiff and the class members

101.    Defendant had superior knowledge regarding the omission at issue, i.e., Defendant, and not class members, was in a better position to know that it was receiving illegal kickbacks from insurance companies.

CLASS ACTION COMPLAINT - 18

102.     Consumers could not readily know that Defendant was receiving undisclosed, illegal insurance commissions, in part because both Defendant and the insurers with whom it partnered actively withheld this information from consumers.

103.     Defendant, who actively withheld knowledge of its illegal kickbacks from consumers, was aware that consumers would rely on these omissions that allowed Defendant to collect illegal kickbacks.

104.     As a consequence of Defendant's fraudulent concealment, Plaintiff and the class members were injured as previously specified.

## XI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Classes, prays for relief as follows:

A.     An order certifying the proposed Classes and designating Plaintiff as the named representative of the Classes and designating her attorneys as Class Counsel;

B.     All declaratory relief available;

C.     An award to Plaintiff and the Classes of out of pocket, compensatory, exemplary, and statutory damages and injuries, in an amount to be proven at trial;

D.     An order enjoining Defendant from further engaging in the misconduct alleged herein;

E.     For restitution of all money or property wrongfully obtained by Defendant;

F.     For disgorgement, for the benefit of the Classes, all or part of the ill-gotten profits;

G.     An award of attorneys' fees and costs as allowed by law;

H.     An award of pre-judgment and post-judgment interest, as provided by law;

CLASS ACTION COMPLAINT - 19

1    I.      Leave to amend the Complaint to conform to the evidence produced at trial; and

2    J.      Such other relief as may be appropriate under the circumstances.

3                              **XII.  DEMAND FOR JURY TRIAL**

4         Plaintiff hereby demands a trial by jury of all claims so triable.

5         DATED this 16th day of October, 2019.

6                              TOUSLEY BRAIN STEPHENS PLLC

7                              *s/ Kim D. Stephens*
                              Kim D. Stephens, P.S. WSBA #11984

8                              *s/ Rebecca L. Solomon*
9                              Rebecca L. Solomon, WSBA #51520

10                             1700 Seventh Avenue, Suite 2200
                              Seattle, Washington  98101
11                             Telephone:  206.682.5600/Fax: 206.682.2992
                              Email: kstephens@tousley.com
12                                      rsolomon@tousley.com

13                             STULL, STULL & BRODY
                              Melissa R. Emert *(pro hac vice pending)*
14                             6 East 45th St.-5th Floor
                              New York, NY 10017
15                             Telephone: 954.341.5561/Fax: 954.341.5531
                              Email: memert@ssbny.com
16

17                             GLANCY PRONGAY & MURRAY
                              Marc L. Godino *(pro hac vice pending)*
                              1925 Century Park East, Suite 2100
18                             Los Angeles, CA 90067
                              Telephone: 310.201.9150/Fax: 310.432.1495
19                             Email: mgodino@glancylaw.com

20                             LEVI & KORSINSKY, LLP
                              Rosemary M. Rivas *(pro hac vice pending)*
21                             44 Montgomery Street, Suite 650
                              San Francisco, CA 94104
22                             Telephone: 415.373.1671/Fax: 415.484.1294
                              Email: rrivas@zlk.com

23

24

CLASS ACTION COMPLAINT - 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

GUSTAFSON GLUEK PLLC
Daniel C. Hedlund *(pro hac vice pending)*
120 South 6th St.
Minneapolis, MN 55401
Telephone: 612.333.8844/Fax 612.339.6622
Email:  dhedlund@gustafsongluek.com

***Counsel for Plaintiff Madeleine F. Shattenkirk***

6670/001/543834.1

CLASS ACTION COMPLAINT - 21